UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS SANTIAGO,<br><br>     Plaintiff,<br>v.<br><br>BUTLER COMPANY,<br><br>     Defendant. | 3:08-CV-1297 (CSH) |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

HAIGHT, Senior District Judge:

  Plaintiff Luis Santiago asserts three claims against defendant Butler Company ("Defendant" or "BCI"), all stemming from an alleged layoff that occurred in or about April 2008. Plaintiff's first count alleges a violation of the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); his second count alleges retaliation for filing a workers' compensation claim in violation of Connecticut General Statutes § 31-290a; and his third count seeks damages for a breach of an oral contract. Amended Complaint ("Am. Comp.").[1] Defendant files the present motion (the "Motion") seeking summary judgment

---

[1] Plaintiff filed his original complaint on August 26, 2008, and Defendant answered it on September 25, 2008. Almost two months later, on November 17, 2008, Plaintiff filed his first Amended Complaint, after the time for amendment as of right had expired under Federal Rule of Civil Procedure 15(a). Plaintiff never sought leave from the Court to file an amended complaint, nor did he represent that he had obtained Defendant's consent to file the amendment. *See* Fed. R. Civ. P. 15(b). Nevertheless, Defendant does not appear to have raised any objection to the timeliness of the Amended Complaint, and Defendant's present motion presumes the Amended Complaint to be the operative document. Given the well-known preference for resolving issues on the merits, and the admonition in Federal Rule of Civil Procedure 15(b) that "[t]he court should freely give leave when justice so requires," the Court accepts the Amended Complaint as the operative complaint in this case.

against each of the counts in Plaintiff's Amended Complaint. For the reasons stated below, Defendant's motion is **DENIED** on all counts.

**I.      Relevant Facts**

Defendant is a construction and landscaping company. Plaintiff began working for Defendant in 1997. The parties dispute the exact contours of his job responsibilities, but at the very least he worked as a driver. *See* Am. Comp. ¶ 7; Defendant's Local Rule 56(a)(1) Statement ("Def. Stmt.") ¶ 1; Plaintiff's Local Rule 56(a)(2) Statement ("Pl. Stmt.") ¶ 1.

On January 2, 2008, Plaintiff slipped on ice while working and strained his back. He filed a workers' compensation claim for that injury. The parties dispute the exact dates when Plaintiff stopped working, the dates when he resumed working, the duties to which he was assigned, and whether there were days when Plaintiff refused to work despite being cleared for light duty work by his treating physician. *Compare* Def. Stmt. ¶¶ 6-11 *with* Pl. Stmt. ¶¶ 6-11. Plaintiff asserts that after he returned to work, having been cleared for light duty, his supervisors mistreated him in various ways and failed to accommodate his need for light work.   Affidavit of Luis Santiago ("Santiago Aff.") ¶¶ 12-17. [Pl. Memo. Ex. A].

In or about April of 2008, Plaintiff's wife was diagnosed with terminal cancer, and in early May, Plaintiff met with Peter Daws, the Human Resources Manager at BCI, and discussed the situation. Am. Comp. ¶¶ 9-10; *see also* Plaintiff's Objection to Defendant's Motion for Summary Judgment ("Pl. Memo.") at 9-11; Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Memo.") at 3.

Plaintiff and Daws dispute what was said in that meeting in dueling affidavits.

Plaintiff describes the interaction as follows.  He asked Daws for a short leave of absence from work to provide support for his wife during her last months.  Daws told him that Defendant would not give him leave, but instead would lay him off, thus enabling him to collect unemployment benefits. Plaintiff thought he had no choice but to accede. Plaintiff's main concern was that he have his job back after his wife passed away.  Daws promised him that he would get the exact same job back.  Plaintiff was unaware of his FMLA rights and Daws did not inform him about them.  Santiago Aff. ¶¶ 20-24.

     Daws offers an account of this conversation that differs in several material respects.  He says that after he contacted Plaintiff to inquire about his status, Plaintiff came to his office and met with him.  Plaintiff told him that he needed time off to care for his wife.  Daws explained Plaintiff's FMLA rights to him.   However, Plaintiff refused to take FMLA leave because it would be unpaid.  Therefore, Plaintiff requested that he be laid off so he could collect unemployment benefits.  Affidavit of Peter Daws ("Daws Aff.") ¶¶ 16-23. [Def. Memo. Ex. B.]

     After this discussion, on an undetermined date, Defendant laid off Plaintiff. Defendant's  president, Robert Butler, avers that he "made the decision to lay off the Plaintiff effective April 25, 2008 at the Plaintiff's request on the grounds that he needed to collect unemployment compensation while caring for his spouse."  Affidavit of Robert Butler ("Butler Aff.") ¶ 4.  [Def. Memo. Ex. C.]  Butler asserts that after this layoff Defendant eliminated Plaintiff's position because of a reduction in its workforce triggered by the economic recession.  Butler Aff. ¶ 7.  In July 2008, after his wife passed away, Plaintiff inquired with Defendant about reemployment.  Defendant told him that it did not

have a position for him.  Santiago Aff. ¶ 23; Butler Aff. ¶¶ 8-9.  This action followed.

**II.     Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

In the employment discrimination context, Plaintiff will bear the ultimate burden of proof at trial, subject in some cases to the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex* at 322-23.  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

**III.    Discussion**

**A.     FMLA Claim**

In the first count of the Amended Complaint, Plaintiff alleges that Defendant violated the FMLA by failing to grant him leave under the FMLA and retaliating against

him for claiming such leave by laying him off. Am. Comp. ¶¶ 19-23.[2] The FMLA makes it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1). Plaintiff proceeds under two theories: that Defendant interfered with his FMLA rights, and that Defendant retaliated against him for his exercise or the attempt to exercise those rights. Specifically, Plaintiff alleges that at the meeting with Daws in April 2008 he requested a short leave of absence, and that Daws refused to provide such leave, instead insisting on laying him off. Pl. Memo. at 13-25; Santiago Aff. ¶ 20.

Defendant, seeking summary judgment against this claim, bases its argument on only one element that is common to both interference and retaliation claims: Plaintiff's alleged failure to notify Defendant that he intended to exercise rights under the FMLA. Def. Memo. at 10-11. One of the elements of an FMLA interference claim is that the plaintiff "gave notice of his intent to take [FMLA] leave." *Basso v. Potter*, 596 F.Supp.2d 324, 337 (D. Conn. 2009). To make out a *prima facie* case for FMLA retaliation, a plaintiff must establish that he exercised rights protected under the FMLA. *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004).

Defendant argues that "the evidence demonstrates that Defendant laid the Plaintiff off at his request, issued a termination notice indicating 'lack of work,' and that the

---

[2] It is not clear whether Plaintiff also claims that Defendant interfered with his rights under the FMLA simply by failing to provide adequate notice of his rights under the FMLA, but if he does, such a claim would fail as a matter of law. Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 83 F.3d 155, 162 (2d Cir. 1999).

Plaintiff collected unemployment benefits." *Id.*[3] Defendant's evidence that Plaintiff did not request FMLA leave during his meeting with Daws consists of Daws's affidavit about that meeting. Def. Memo. at 11; Def. Stmt. ¶ 17; Daws Aff. ¶ 20.

Plaintiff, on the other hand, offers evidence that he exercised FMLA rights in the form of his own affidavit to the effect that, in the meeting with Daws, he "specifically requested from Mr. Daws a short leave of absence from work to provide support for my wife during her last months, her death and funeral services." Santiago Aff. ¶ 20. While Plaintiff does not allege that he mentioned the FMLA, his alleged request nevertheless constituted an exercise of his rights under the FMLA. "When an employee seeks leave for the first time for an FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA." 29 C.F.R. § 825.302(c). "In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." *Id.*

The dueling affidavits from Plaintiff and Daws could hardly present a clearer example of a genuine issue of material fact: Plaintiff says one thing, Daws says another. Defendant's argument that it provided Plaintiff with notice of his rights under the FMLA is

---

[3] Because the Court denies summary judgment on other grounds, and because Defendant's alleged legitimate non-discriminatory reason (LNDR) is not at issue in this Motion, the Court need not at this time address the question of whether public policy allows Defendant to assert an LNDR based upon Defendant's provision of false information to the State of Connecticut about the reason for Plaintiff's separation from employment. The Court notes that Plaintiff was eligible for unemployment compensation under the provision that permits an employee to leave work to care for a spouse with an illness or disability. *See* Conn. Gen. Stat. § 31-236(a)(2)(A)(ii).

not to the point. *See* Def. Memo. at 10-11. If an employee makes a request that substantively triggers the FMLA, the fact that he knows about FMLA rights and fails to mention those rights is not determinative. "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). It is the employer who must inquire further to determine if FMLA leave is at issue. *Id.*

Because there exists a genuine issue of material fact about whether Plaintiff exercised his rights under the FMLA, summary judgment against the FMLA claim is denied.[4]

### B. Workers' Compensation Claim

In the Second Count of the Amended Complaint, Plaintiff alleges that Defendant retaliated against him for making the January 2008 workers' compensation claim, in violation of Connecticut General Statutes § 31-290a. Connecticut state law prohibits an employer from discriminating against an employee because the employee filed a claim for workers' compensation benefits. Conn. Gen. Stat. § 31-290a.

Defendant argues that it is entitled to summary judgment against this claim because Plaintiff does not state a *prima facie* case. "To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right

---

[4] Defendant briefly suggests that Plaintiff did not have the right to get his job back under the FMLA in any event, based on assertions about the reason for the elimination of Plaintiff's position. Def. Memo. at 12. However, even if Defendant is making such an argument, there is also a hotly contested issue of fact between the parties about that account of events. *See, e.g.,* Affidavit of Noel Green ("Green Aff.") ¶ 24. [Pl. Memo. Ex. B.]

afforded her under the act and that the defendant discriminated against her for exercising that right." *Diaz v. Hous. Auth. of Stamford*, 258 Conn. 724, 731 (2001). The elements of a *prima facie* case are (1) that the plaintiff engaged in a protected activity, (2) that the employer was aware of the activity, (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection existed between the protected activity and the adverse action. *Martin v. Town of Westport*, 108 Conn. App. 710, 719 (2008).

Specifically, Defendant argues that summary judgment against this claim is warranted because "there is no genuine issue of material fact as to whether a causal connection existed between the Plaintiff's workers compensation claim and the alleged adverse employment action [*i.e.*, the layoff]." Def. Memo. at 15. However, Plaintiff does present evidence of such a causal connection. In a claim for retaliation under Section 31-290a, a causal connection may be established (1) by showing that the protected activity was followed closely by discriminatory treatment, (2) by presenting evidence of disparate treatment of fellow employees who engaged in similar conduct, or (3) through evidence of retaliatory animus directed against the plaintiff by the defendant. *Martin v. Town of Westport*, 108 Conn. App. 710, 719 (2008). Plaintiff presents all three types of evidence.

First, Plaintiff points to the temporal proximity between the filing of the workers' compensation claim and the layoff. Pl. Memo. at 29. The layoff occurred three and a half months after the protected activity. This period is not too long to prevent a jury from rationally inferring a causal connection. In one Section 31-290a case, the Connecticut Superior Court held that there was an issue of fact for the jury to decide as to whether a gap of eight months between the filing of a workers' compensation claim and the adverse

action was short enough to establish a causal connection.  *Simoes v. Olin Corp.*, No. UWY-06-6000206, 2010 WL 2817265, at *3 (Conn. Super. Ct. July 4, 2010).  A federal court considering a claim under Section 31-290a found that a gap of thirteen months was "not too temporally disconnected to support an inference of discrimination."  *Dupee v. Klaff's, Inc.*, 462 F.Supp.2d 233, 240 (D. Conn. 2006).  *See also Oquendo v. Margaritaville of CT*, No. CV-11-6007189, 2011 WL 2739626, at *3 (Conn. Super. Ct. June 24, 2011) (gap of six months established causal connection); *Rodriguez v. Host Int'l, Inc.*, No. CV-99-0585323, 2000 WL 1995589, at *3 (Conn. Super. Ct. Dec. 28, 2000) (gap of seven or eight months established causal connection).

     Second, Plaintiff presents evidence of disparate treatment of fellow employees who made claims for workers' compensation.  He presents affidavits from four coworkers who assert that Defendant discouraged workers' compensation claims and discriminated against those who filed such claims.  Green Aff. ¶¶ 17-19 (Defendant tried to convince Green to drop his claim and punished him when he did so); Affidavit of Heriberto Cabrera ¶¶ 8-10 (after Cabrera filed workers' compensation claim, Defendant pressured him to drop the claim and forced him to do work outside of his doctor's restrictions); Affidavit of Jorge Cortes ¶¶ 5-6 (Cortes was fired after contacting a lawyer for a workplace injury); Affidavit of Juan Rodriquez ¶¶ 6-8 (Defendant treated Rodriguez badly after he filed each of two workers' compensation claims and was ultimately fired because of those claims).

     Third, Plaintiff also submits evidence of retaliatory animus directed at him.  He provides his own affidavit to the effect that after he filed his claim he was treated badly by Defendant, denied light duty work he was physically capable of performing, and pressured

to drop the workers' compensation claim. Santiago Aff. ¶¶ 10-17. The affidavit of Noel Green, one of the coworkers, asserts that Plaintiff was mocked by his supervisors and treated differently after he filed the workers' compensation claim. Green Aff. ¶¶ 21-23.

A motion for summary judgment is not the occasion for the Court to weigh the persuasiveness of Plaintiff's evidence of a causal connection against such evidence as Defendant offers. Plaintiff has clearly provided enough evidence on this issue to create a genuine issue of material fact that can be submitted to a jury. Defendant's motion for summary judgment on the Section 31-290a count is denied.

### C.     Breach of Oral Contract Claim

Although Plaintiff labels the last count a claim for "breach of verbal contract," his Amended Complaint alleges only that Defendant "entered into a verbal agreement that when he [Plaintiff] was able to return to work, that Defendant Company would rehire him to the exact same position as he was before he left." Santiago Aff. ¶ 23. This does not allege a mutually binding contract between the parties. Plaintiff alleges only a unilateral promise by Defendant to reinstate him. Plaintiff does not allege that he gave any consideration for that promise or performed any duties required by it. The elements of an action for breach of contract include performance by or promises from a plaintiff. "The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." *Conn. Nat'l Bank v. Voog*, 233 Conn. 352, 366 (1995).

While Plaintiff does not allege the elements of a contract, he does allege facts that support a claim for promissory estoppel under Connecticut law. "[U]nder the doctrine of

promissory estoppel, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 213 (1987), *quoting* Restatement (2d) of Contracts ¶ 90.  Plaintiff alleges a promise by Daws that could reasonably be expected to induce reliance and his reliance on that promise to his detriment.  Am. Comp. First Count ¶ 13, Count Three ¶ 24; Pl. Aff. ¶ 21.

When a plaintiff alleges the facts necessary to support a cause of action, but mislabels the cause of action, this Court construes his complaint as alleging the proper cause of action.  "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). "The fact that the appellant mislabeled his cause of action against the individual defendants is irrelevant, so long as he was entitled to relief against them under any theory." *Clute v. Davenport Co.*, 584 F.Supp. 1562, 1575 (D. Conn. 1984), *quoting Sessions v. Chrysler Corp.*, 517 F.2d 759, 760-61 (9th Cir. 1975).  "[T]he court is not permitted to impose a sanction as drastic as a judgment of dismissal would be to force legally artistic pleading, but 'must look beyond the mere mountain of words to the meaning sought to be conveyed.'" *Stanley v. Harper Buffing Machine Co.*, 28 F.R.D. 579, 581 (D. Conn. 1961), *quoting Nagler v. Admiral Corp.*, 248 F.2d 319, 325 (2d Cir. 1957).  *See also Aquilone v. Republic Nat'l Bank of N.Y.*, No. 98 Civ. 5451, 1998 WL 872425, at *4-5 (S.D.N.Y. Dec. 15, 1998) (construing a claim labeled "tortious interference with a contractual relationship" as a claim for tortious interference with a business relationship).

The Court therefore construes the Third Count as a claim for promissory estoppel

under Connecticut law, and construes Defendant's motion as seeking summary judgment against that claim. Defendant's only argument on this subject is that Plaintiff was an at-will employee. Def. Memo. at 15-18. However, there is no rule under Connecticut law that an employer cannot make to an at-will employee a promise that is binding as a matter of promissory estoppel. *Ward v. Distinctive Directories, LLC*, 104 Conn. App. 258, 259 (2007) (when a contract for employment at will is terminated, a disappointed employee has a claim for relief if he can establish promissory estoppel). [5]

If the Motion is taken as arguing that Plaintiff does not provide evidence to create an issue of fact that a promise sufficient to create promissory estoppel was made, that argument is unavailing. Plaintiff provides enough evidence in support of this claim sufficient to create a genuine issue of material fact. First, Plaintiff provides his own testimony in his affidavit:

> My main concern was that I kept my job and that I had my job when I came back. Before I left the meeting, I specifically looked at Mr. Daws face to face to confirm that I was not being fired and that when I returned I would have my same job back. All I wanted was my job back after my wife passed away. Mr. Daws looked at my face and promised me that after my wife passed and I felt ok to return that I would have my exact same job back.

Santiago Aff. ¶ 21. If that promise was made, it is a promise which could reasonably be expected to induce reliance. Second, Plaintiff offers Daws's deposition testimony:

> Q. Did you make representations to Mr. Santiago that after he returned back to

---

[5] Even if this claim were construed as a claim for breach of oral contract, summary judgment against that claim would not be appropriate. Under Connecticut law, at-will employment can be modified by a contract between the parties, including an oral contract. *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 15 (1995). Thus, the fact that an existing employment relationship was at-will is not by itself enough to establish that the parties created no other contract.

work after his wife — after he took care of his wife's illness, that he could have his job back?
A.  Yes.

Deposition of Peter Daws 111:13-17.  [Pl. Memo. Ex. H.]

Because Defendant has not established the absence of a genuine issue of material fact, the Court denies summary judgment against this claim.

## IV.     Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. 20] is **DENIED** in all respects.


**It is SO ORDERED.**

Dated: New Haven, Connecticut
       February 17, 2012

                                               *Charles S. Haight, Jr.*
                                               Charles S. Haight, Jr.
                                               Senior United States District Judge